1 DAVID L. ANDERSON (CABN 149604)
United States Attorney

2
HALLIE HOFFMAN (CABN 210020)
3 Chief, Criminal Division

4 HELEN L. GILBERT (NYBN 4736336)
Assistant United States Attorney
5
    450 Golden Gate Avenue, Box 36055
6     San Francisco, California 94102-3495
    Telephone: (415) 436-7021
7     FAX: (415) 436-7234
    helen.gilbert@usdoj.gov
8
Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 18-437 SI |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| BRIAN GUTIERREZ VILLASENOR, | Sentencing Date: April 12, 2018, 1:30 p.m.<br>Court: Hon. Susan Illston |
| Defendant. | |

## I. INTRODUCTION

On November 13, 2018, the defendant pleaded guilty to Counts One and Two of the Information filed in this case. These Counts charged the defendant with possession with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii) (Count One), and with transporting funds to promote unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A) (Count Two). The defendant pled guilty pursuant to a Rule 11(c)(1)(B) plea agreement. The parties agreed to a Total Offense Level of 33. U.S. Probation determined that the defendant is in Criminal History Category I, and calculated a Total Offense Level of 35. Pursuant to its promises in the Plea Agreement, the

government recommends a low-end sentence based on the parties' agreed upon Total Offense Level 33 of 135 months custody, to be followed by 5 years of supervised release. The government agrees with the Probation Office's recommendation that a $40,000 fine be imposed as well.

## II. BACKGROUND

### A. Offense Conduct

For at least four years, the defendant distributed cocaine and methamphetamine for a dark net vendor site called *JetSetLife*. *JetSetLife* was a vendor selling drugs through several black market sites on the dark web, which use encryption technology to ensure that communications and transactions are shielded from interception and monitoring. Customers would order drugs from *JetSetLife*, and would often pay for these drugs using cryptocurrencies, such as bitcoin, which allow for greater anonymity. PSR ¶ 6. The defendant would then fulfill orders to *JetSetLife*'s U.S.-based customers. PSR ¶ 7.

The people who ran *JetSetLife* would send the defendant money through wire transfers and bitcoin payments, which the defendant then used to buy drugs and other supplies to fulfill customers' orders, and also to pay himself for this drug distribution. PSR ¶ 12; Plea Agreement, Dkt. No. 29, ¶ 2, p. 4. Between October 2014 and April 2018, the defendant received over $575,000 to distribute drugs for *JetSetLife*. PSR ¶ 12. He spent this money on, among other things, luxury watches and jewelry. PSR ¶ 12.

Law enforcement officials confirmed that the defendant sent at least 34 packages containing cocaine and/or methamphetamine to people who ordered these drugs through *JetSetLife* between April 11, 2018 and May 15, 2018. PSR ¶¶ 8-11; Plea Agreement, Dkt. No. 29, ¶ 2, pp. 3-4 (April 11, 2018 (one package containing cocaine); April 18 and 19, 2018 (seventeen packages containing cocaine and/or methamphetamine); May 2, 2018 (one package containing cocaine); May 7, 2018 (six packages containing cocaine and/or methamphetamine); May 14 and 15, 2018 (nine packages containing cocaine and/or methamphetamine)). On May 17, 2018, law enforcement officials arrested the defendant and recovered from his bedroom eight packages containing cocaine ready to be mailed to *JetSetLife* customers, along with additional cocaine and methamphetamine. PSR ¶ 13. The defendant agreed that he is responsible for 596 grams of cocaine and 325.3 grams of pure methamphetamine. PSR ¶ 14. This figure is based on some of the packages that he mailed in April and May (only a subset of these

packages were seized by law enforcement) and on the cocaine and methamphetamine recovered from the defendant's residence.

On May 17, 2018, during the same search of the defendant's residence, law enforcement officials also recovered six firearms belonging to the defendant. PSR ¶ 13. In an attempt to flee, the defendant had put two pistols (one with a 30-round extended magazine) into a duffle back that he threw out of his window when law enforcement officials arrived at his home. *Ibid*. Law enforcement officials found another two pistols and a rifle in the defendant's bedroom, along with multiple boxes of ammunition and magazines, including a 50-round magazine and a 100-round ammunition drum. *Ibid*. They recovered the sixth firearm from the defendant's cousin. *Ibid*.

**B.     Sentencing Guidelines Range and Plea Agreement**

The defendant pled guilty pursuant to a Rule 11(c)(1)(B) Plea Agreement. The parties agreed to the following Guidelines calculation in the Plea Agreement:

<u>Group One: Controlled Substances Offense</u>

    a.    Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(3):    32
(3,000 to 10,000 kilograms of marijuana, pursuant
to conversion formula for methamphetamine (actual)
and cocaine, set forth in § 2D1.1, App. Note 8(D))

        Amount of drugs:
            Methamphetamine (actual)    6,500 kg marijuana equivalent
            (1 gram is equivalent to 20 kilograms
            of marijuana, per App. Note 8(D))

            Cocaine    120 kg marijuana equivalent
            (1 gram is equivalent to 20 grams
            of marijuana, per App. Note 8(D))

            Total    6,629 kg marijuana equivalent

    b.    Specific offense characteristics under U.S.S.G. Ch. 2
- Mass marketing by computer service, U.S.S.G. § 2D1.1(b)(7)    + 2
- Safety valve, U.S.S.G. §§ 2D1.1(b)(17), 5C1.2    Not eligible

    c.    Adjusted Offense Level    34

<u>Group Two: Money Laundering</u>

    d.    Base Offense Level, U.S.S.G. § 2S1.1(a)(1)    34

    e.    Specific offense characteristics under U.S.S.G. Ch. 2
- Convicted under § 1956    + 2

    f.    Adjusted Offense Level    36

<u>Grouping</u>
Controlled substance and money laundering offenses do not group. U.S.S.G. § 3D1.2, *see also* U.S.S.G. § 2S1.1, application note 6. Highest offense level is 36, one additional unit is added for next offense level, resulting in no additional points. U.S.S.G. § 3D1.4(a), (b).

    g.    Adjusted Grouped Offense Level    36

    h.    Acceptance of Responsibility:    - 3
If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing.

    i.    Total Offense Level:    33

The parties reached no agreement regarding the defendant's Criminal History Category. The defendant also agreed in the Plea Agreement to a special search condition. Plea Agreement, Dkt. No. 29, at ¶ 8.

    The Probation Office's Guideline calculation mirrors the parties except that it also includes a two-point enhancement under Guidelines provision § 2D1.1(b)(1) for the possession of a dangerous weapon, resulting in a Total Offense Level of 35. PSR ¶¶ 21, 38. The Probation Office determined that the defendant is in Criminal History Category I. PSR ¶ 43. Therefore, the parties' Guidelines calculation results in a range of 135 to 168 months' imprisonment, and the Probation Office's Guidelines calculation results in a range of 168 to 210 months' imprisonment. PSR ¶ 63.

**III.    GOVERNMENT'S SENTENCING RECOMMENDATION**

    The government recommends a sentence of 135 months' imprisonment, five years of supervised release, a $40,000 fine, and a $200 special assessment. A sentence of 135 months' imprisonment is sufficient but not greater than necessary to comply with 18 U.S.C. § 3553(a). The nature, circumstances, and seriousness of the offenses are extremely significant. The defendant sold cocaine and methamphetamine to customers all over the United States for at least four years through *JetSetLife*. During this time, he was provided with over $575,000 in wire transfers and bitcoin payments by other individuals who managed this dark web online drug sales business, and one of these international wire transfers is the basis of the money laundering charge. Drug distribution was essentially the defendant's sole source of income during this time, and he used these drug proceeds to buy himself a luxury car and fancy jewelry and watches. In addition, he maintained an arsenal of firearms, ammunition, and high

capacity magazines in his bedroom, where he also stored and packaged cocaine and methamphetamine for distribution.

The defendant's controlled substances guidelines capture only a small amount of time (about five weeks) of the defendant's total drug distribution, which he has admitted lasted for four years. A sentence of 135 months is not greater than necessary to provide just punishment for this long-running offense and would also promote respect for the law and afford adequate deterrence. The government's recommendation also accounts for the history and characteristics of the defendant – his crimes are significant, but he agreed to an information and to an early resolution of his case, and he has no prior criminal history. Finally, the Probation Office has concluded that the defendant has the ability to pay a $40,000 fine, and the government supports this recommendation.

**IV.   CONCLUSION**

For the reasons discussed above, the government respectfully requests that the Court impose a sentence of 135 months' imprisonment, five years of supervised release, a $40,000 fine, and a $200 special assessment.

Dated: April 8, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

  /s/
HELEN L. GILBERT
Assistant United States Attorneys